## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IVAN K. KING, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-01967 (JDB) |
| | ) | |
| MCKEE NELSON LLP, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ANSWER

Defendant, McKee Nelson, LLP ("McKee Nelson" or "the Firm"), hereby answers Plaintiff's Complaint as follows.[*]

### FIRST DEFENSE

1.     Defendant admits that Plaintiff was hired in October 2000 as a Records Management Coordinator.  Defendant admits that until February 2003, Plaintiff's supervisor was James Lent, a white male who was the Firm's Librarian.  Defendant admits that as Records Management Coordinator, Plaintiff's primary function was to coordinate the Firm's records management efforts.  Defendant does not have sufficient information to admit or deny Plaintiff's allegation that performing his job duties was "stressful and overbearing."  Defendant denies the remaining allegations contained in Paragraph 1.

2.     Defendant admits that in March 2001, the Firm moved from 1150 18th Street, N.W. to its current location at 1919 M Street, N.W.  Defendant admits that Plaintiff provided assistance with the move.  Defendant admits that the Firm hired a moving company to facilitate

_____

[*] Because the paragraphs in Plaintiff's Complaint are not separately numbered, for the Court's convenience, Defendant has attached a copy of the Complaint with numbered paragraphs supplied.

the office relocation.  Defendant admits that the Firm gave awards to Firm employees who assisted in the office relocation.  Defendant denies the remaining allegations in Paragraph 2.

3.    Defendant admits that Plaintiff was promoted to Records Manager in February 2003, and that this promotion was accompanied with a salary increase.  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he "went to J. Bracewell" "in anticipation of the salary increase and other benefits associated with [his] promotion." Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he "was very much taken back by [McCallum's] comments."  Defendant admits that McCallum became the Firm's Finance Director in approximately 2002.  Defendant denies the remaining allegations in Paragraph 3.

4.    Defendant admits that in February 2003, in connection with his promotion to Records Manager, the Firm raised Plaintiff's salary to $60,000 and permitted him to remain eligible for overtime pay.  Defendant admits that when Plaintiff was initially hired as Records Management Coordinator in October 2000, his salary was $46,000.  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he was "stunned" when he received the letter informing him of his salary increase.  Defendant denies the remaining allegations contained in Paragraph 4.

5.    Defendant admits that Plaintiff raised an issue regarding his salary with the Firm in 2003.  Defendant lacks sufficient information to admit or deny Plaintiff's allegations respecting the salary information Plaintiff claims he received from Camille Brooks, Gladys Moore, and his "friend who is the Director of Human Resources at a large Washington based law firm."  Defendant admits that Plaintiff's promotion to Records Manager was accompanied by a salary increase to $60,000.  Defendant admits that it did not send Plaintiff a "formal letter

acknowledging the [salary] adjustment." Defendant denies the remaining allegations contained in Paragraph 5.

6.        Defendant denies Plaintiff's allegation that he "experienced harassment, hostility, defamation of character and uncooperative attitude from any of the white managers and directors." Defendant admits that Plaintiff authored a memorandum on November 19, 2002 regarding his concerns about Al Roth, and avers that the memorandum speaks for itself. Defendant avers that the "memo which outlines the complete event" was not "attached" to Plaintiff's Complaint. Defendant avers that the Firm did not view Plaintiff's complaint regarding Roth as one of race discrimination. Defendant denies the remaining allegations contained in Paragraph 6.

7.        Defendant denies the allegation contained in Paragraph 7.

8.        Defendant denies the allegations contained in Paragraph 8.

9.        Defendant admits that Mark Vitalie (who was an employee of Ernst & Young, which provided technology support services to the Firm) served as the Firm's Director of Technology until he was terminated by Ernst & Young in October 2003. Defendant denies that the Firm ever received complaints regarding Vitalie that were of a racial nature. Defendant denies the remaining allegations contained in Paragraph 9.

10.       Defendant admits that Plaintiff began to oversee the Firm's copy center in April 2002. Defendant admits that the Firm sought to network the copiers. Defendant admits that Plaintiff was involved in the purchasing of new copier equipment. Defendant admits that Plaintiff informed Vitalie about a meeting with Xerox, but avers that Vitalie could not attend the meeting. Defendant admits that Bracewell approved the purchase and installation of new copier equipment. Defendant denies the remaining allegations contained in Paragraph 10.

11.     Defendant admits that Plaintiff was involved in the installation of the copier equipment.  Defendant admits that Plaintiff sought Vitalie's assistance in installing the copier equipment.  Defendant denies the remaining allegations contained in Paragraph 11.

12.     Defendant admits that Plaintiff went to Vitalie's office and delivered installation documentation for the copier equipment.  Defendant denies the remaining allegations contained in Paragraph 12.

13.     Defendant admits that on February 20, 2003, Plaintiff received a request for assistance on a time-sensitive matter from a legal assistant.  Defendant admits that Plaintiff contacted the Information Technology Department for assistance and spoke with David Yen.  Defendant admits that Plaintiff and Vitalie had a telephone conversation in which Vitalie made unprofessional comments to Plaintiff.  Defendant avers that Plaintiff did not complain that Vitalie's comments were of a racial nature.  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he felt "upset, nervous, and disturbed [and] that [his] job was in jeopardy even though [he] had done no wrong."  Defendant denies the remaining allegations contained in Paragraph 13.

14.     Defendant denies that in February 2003, Beaver "requested a change in [Plaintiff's] work schedule."  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he felt that "because [Vitalie] was white, he would be given preferable treatment."  Defendant lacks sufficient information to admit or deny Plaintiff's allegation regarding his "feelings of mis-trust, and unfair treatment."  Defendant admits that in February 2003, McCallum and Vitalie invited Kenneth Beaver (the Firm's new Director of Operations) to lunch, and described the lunch as "getting good old boys network started," which was a jesting

4

reference to a female manager who had not been invited.  Defendant denies the remaining allegations contained in Paragraph 14.

15.    Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he "fear[ed] that Mark would go to Ken Beaver and fabricate a story, which would be unfavorable to [him]."  Defendant admits that Plaintiff contacted Bracewell at home after his conversation with Vitalie and informed Bracewell of Plaintiff's version of events.  Defendant denies the remaining allegations contained in Paragraph 15.

16.    Defendant admits that Plaintiff went on vacation shortly after the February 20, 2003 telephone conversation with Vitalie.  Defendant lacks sufficient information to admit or deny Plaintiff's remaining allegations concerning his state of mind or the location of his vacation contained in Paragraph 16.

17.    Defendant admits that upon Plaintiff's return from vacation, Bracewell held a meeting with Dixon, Beaver, and Plaintiff regarding Plaintiff's February 20, 2003 telephone conversation with Vitalie.  Defendant admits that Bracewell conducted an investigation of the incident, in which he interviewed all parties involved, gave Plaintiff a memorandum regarding the outcome of the investigation, gave Vitalie a written reprimand for his conduct, and informed Vitalie that future misconduct would result in a request by McKee Nelson to Ernst & Young to reassign Vitalie.  Defendant admits that the Firm terminated Will Hinton, who is African American, under circumstances different from those involving Vitalie.  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he "wasn't at all pleased with the outcome."  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he "felt that Mark received preferable treatment, that as a 'Black' employee if [he] had done the

same, [he] would've been fired."  Defendant denies the remaining allegations contained in

Paragraph 17.

18.     Defendant admits that in Bracewell's memo to King, Bracewell stated that he had

instructed Beaver that there was to be no retaliation against King for his complaint against

Vitalie.  Defendant denies the remaining allegations contained in Paragraph 18.

19.     Defendant admits that there was a meeting attended by Plaintiff, Beaver, Vitalie,

and Yen regarding improvement of the quality of the documents produced by the Firm's copier

equipment.  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he

"realized what was going on."  Defendant lacks sufficient information to admit or deny

Plaintiff's allegation that he "went to [his] office to contemplate what [he] should do about what

happened."  Defendant lacks sufficient information to admit or deny Plaintiff's allegation that he

was "reluctant to take the issue to Joseph Bracewell."  Defendant admits that Bracewell held a

follow-up meeting with Plaintiff and Dixon regarding Plaintiff's complaint about Vitalie.

Defendant denies the remaining allegations contained in Paragraph 19.

20.     Defendant admits that Bracewell held a follow-up meeting with Plaintiff and

Dixon regarding Plaintiff's complaint about Vitalie.  Defendant lacks sufficient information to

admit or deny Plaintiff's allegation that he "felt like [he] had no place to turn."  Defendant denies

the remaining allegations contained in Paragraph 20.

21.     Defendant admits that Plaintiff abandoned his responsibilities respecting the copy

center on or about February or March 2003.  Defendant lacks sufficient information to admit or

deny Plaintiff's allegation that he "resigned from [his] responsibilities" because of "the

tremendous amount of stress, impartial support and, non-compensation."  Defendant admits that

Bracewell submitted a memorandum to Dixon and Lent on December 16, 2002 regarding

"Recognition of Ivan King." Defendant denies the remaining allegations contained in Paragraph 21.

22.    Defendant lacks sufficient information to admit or deny Plaintiff's allegation respecting his "belief" that "McKee Nelson is a firm that promotes discrimination against blacks & other minorities and that despite being qualified to do a job, we are treated unfairly." Defendant admits that at the time Plaintiff filed his Charge of Discrimination with the EEOC in December 2004, he was one of two black managers at the Firm. Defendant admits that Camille Brooks, Gladys Moore are no longer employed by the Firm, but avers that Gloria Hill is still employed by the Firm. Defendant denies the remaining allegations contained in Paragraph 22.

23.    Paragraph 23 states Plaintiff's demand for relief, to which no response is required. To the extent that a response is required, Defendant denies the allegations contained in Paragraph 23.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

It is unclear on the face of the Complaint whether Plaintiff has filed this lawsuit within 90 days after receiving his right to sue letter from the EEOC, as required by law. To the extent that Plaintiff has not done so, this Court is without jurisdiction to entertain Plaintiff's lawsuit.

## FOURTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficiency of service.

## FIFTH DEFENSE

Plaintiff's claims regarding pay discrimination are untimely because Plaintiff failed to file a Charge of Discrimination within 300 days after the alleged unlawful employment practice

occurred.  To the extent that Plaintiff is seeking to assert a separate pay discrimination claim based on Defendant's failure to give Plaintiff a cash award and gift certificate to the Palm restaurant based on Plaintiff's role in the Firm's office relocation, that claim is likewise barred by the statute of limitations.  To the extent that Plaintiff asserts any other claims based on allegedly unlawful employment practices that occurred more than 300 days prior to his filing of his Charge of Discrimination, those claims are also barred by the statute of limitations.

## PRAYER FOR RELIEF

Wherefore, Defendant respectfully requests that judgment be entered in favor of Defendant and against Plaintiff, that the Complaint be dismissed, that Plaintiff take nothing, and that Defendant be awarded its costs and attorneys' fees, and such other relief as the Court deems just and proper.

Respectfully submitted,


_____/s/_____
W. Gary Kohlman (No. 177527)
Dora V. Chen (No. 485200)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W., Suite 1000
Washington, D.C.  20005
(202) 842-2600

Dated: November 2, 2005

**<u>Certification of Service</u>**

The undersigned hereby certifies that November 2, 2005, the foregoing Notice of

Appearance was filed electronically with the Court and paper copies were served to the

following by express mail:


Ivan K. King
8613 Lonicera Court
Brandywine, MD 20613

                    _____/s/_____
                    Dora V. Chen